UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

LAS VEGAS DIVISION

```
┌─────────────────────────────────────────────┐
│ __FILED        ✓__RECEIVED                    │
│ __ENTERED      __SERVED ON                    │
│         COUNSEL/PARTIES OF RECORD             │
│                                               │
│              JUL 2 0 2015                      │
│                                               │
│        CLERK US DISTRICT COURT                │
│         DISTRICT OF NEVADA                    │
│  BY:_____ DEPUTY         │
└─────────────────────────────────────────────┘
```

MICHAEL HARKEY
Plaintiff

Vs.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, Inc.
a Delaware Corporation,
MERSCORP HOLDINGS, Inc. a Delaware corporation,
HOMECOMINGS FINANCIAL (Bankruptcy)
EXECUTIVE TRUSTEE SERVICES   (Bankruptcy)
FIDELITY NATIONAL DEFAULT SOLUTIONS,
RRR HOMES, LLC, a Nevada LLC,
ALFRED VANDERMADE, Individually and in the capacity
As an employee of New Century Mortgage Corporation,
ERICA REYES, Individually and in the capacity as an
Employee of New Century Mortgage Corporation,
ROSALIE SOLANO, Individually and in the capacity as an
Employee of Executive Trustee Services,
MYRON RAVELO, Individually and in the capacity as an
employee of Executive Trustee Services,
MARICELA GARCIA, Individually and in the capacity as
an employee of Executive Trustee Services,
PATRICIA BABB, Individually and in the capacity of an
employee of Executive Trustee Services,
ILEANNA PETERSON, Individually and in the capacity as
an employee of Executive Trustee Services,
CHRISTINE E GOMEZ SCHWAB, Individually and in the
Capacity as an employee of Executive Trustee Services,
ELIZA MICHELLE MIZA, Individually and in the capacity
as an employee of Executive Trustee Services,
RYAN WELCH, Individually and in the capacity as
managing member of RRR Homes,
SARAH FERRADINO, Individually,
KIM SAND, Individually and in the capacity as an
Employee of Community Excellence, a Nevada corp.
SAMANTHA M. JEDLICKI, Individually,
LEONARD P. KRAJKIEWCZ, Individually,
CATHERINE L. DEAN, Individually,
FIDELITY NATIONAL TITLE AGENCY OF NEVADA,
DOES I-XX and DOE CORPRATIONS I – XX, inclusive
Defendants

Case Number:

**CIVIL COMPLAINT and CLAIM**

JURY TRIAL DEMANDED

# 2:15-cv-01378-RCJ-NJK

CIVIL COMPLAINT                     1 of 10

Michael Harkey, Plaintiff, *pro se*
9101 West Sahara  #105
Las Vegas Nevada 89117

AND NOW APPEARS Plaintiff, Michael Harkey, Pro Se, who, by way of filing the instant CIVIL COMPLAINT, shows the Court:

### JURISDICTION AND VENUE

1. Jurisdiction over this Complaint is had by this Court under 28 U.S.C. §1331 because it pleads violations of 18 USC §1961, et seq., 42 USC §§1983 and 1985, and his supplemental jurisdiction over Plaintiff's pendent state claims pursuant to 28 USC § 1367, the Court has jurisdiction to provide the declaratory relief requested herein under 18 USC § 2201 and may fashion the remedies requested herein under 28 USC §2202.

2. Venue is proper (in this District) under 28 USC §1391 (b)(1) inasmuch as four (4) or more of the Defendants who are natural person are residents of this District, at least one (1) corporate entity is a Nevada corporation, and primarily under 28 USC §1391 (b)(2), because the substantial part of the events or omissions giving rise to the claim(s) occurred in this District, and because the real estate which is the subject of this action is situated in this District.

### BRIEF OVERVIEW

This Complaint stems from Plaintiff's purchase of a residence located at 2220 Village Walk Drive, UNIT 3211, Henderson, Nevada, 89052 for the sum of $950,000.00, approximately $7,500 to be paid monthly. Plaintiff's purchase of this property consummated on December 28, 2005, and was financed by New Century Mortgage Corporation, which was listed on the deed of trust which secured the financing, i.e., the debt (beneficiary) while Nevada Title was listed as trustee, with Plaintiff listed as "Borrower". The Deed also stated: "Lender is the Beneficiary under this instrument". See Deed of Trust, Exh. #1, at page 2, paragraph "C".

In May, 2008, Plaintiff received a NOTICE of DEFAULT (NOD), dated May 9, and recorded May 12, 2008. This instrument named parties, who were strangers to Plaintiff's deed of trust as claimant's to interests in Plaintiff's real property, and alleging their right to invoke the Power of Sale clause in the deed of trust1, in behalf of an unnamed "present beneficiary." See Exhibit #2A. Plaintiff received a subsequent instrument in the mail, dated May 21ʳ 2008, titled "DEBT VALIDATION NOTICE" from Executive Trustee Services, LLC, the company which through its employees has signed the previously received NOD. The

---

1 It was later learned that this NOD was rescinded and a subsequent NOD issued, but Plaintiff never received the second NOD. See Exhibit 2C.

DEBT VALIDATION NOTICE stated in pertinent part: The enclosed document relates to a debt owed to the current creditor: Mortgage Electronic Registration Systems. See Exhibit 2B.

A Notice of Trustee Sale (NOS) was received by Plaintiff in January of 2009. Again parties who were strangers to the deed of trust and unfamiliar to Plaintiff were listed in the NOS. Due to pending bankruptcy petition Plaintiff had filed, this NOS was apparently stayed. See Exhibits #3, #4.

In May 2009, a subsequent NOS was sent to Plaintiff's address, Exhibit #5, despite Plaintiff's express request/instruction via mail that any further correspondences be sent to another address which Plaintiff outlined in a letter sent to the party New Century had apprised would receive monies in its behalf, Homecoming Financial. See Exhibit #6.

During the second or third week of June, 2009, Plaintiff returned Las Vegas and, upon attempting entry into the subject real property, could not gain entrance, as the locks had been changed, but Plaintiff alarmingly, heard voices inside the unit.

A man opened the door and state: "This unit has been foreclosed on. Don't you have other property here?" To this, Plaintiff, shaken up, asserted that there has been an unlawful foreclosure for want of notice and that the man, who identified himself as Ryan Welch, was not entitled in any event to change locks and help himself into the unit, and that Plaintiff still lawfully possessed the unit until/unless otherwise ruled by the Courts.

Welch disavowed Plaintiff and asked Plaintiff to leave the premises. Two women and a child in a stroller were with Welch in Unit 3211, sitting on and using Plaintiff's furniture and other furnishings. Plaintiff initially refused to leave feeling Plaintiff had a lawful right to be there and Welch did not. At this point, one of the women in Welch's company exited the condo unit and returned with Kim Sand who was employed with Community Excellence as the on-site property manager for the Condo-complex. Ms. Sand apprised Plaintiff of the following: "Michael, I've seen the Deed that they have and they probably have a right to be here." Plaintiff, sensing subversion on the part of Kim Sand, departed. Plaintiff later returned and changed the lock following consultation with his attorney. Welch notified law enforcement personnel who were dispatched to the scene, albeit Plaintiff had relayed a letter Welch's attorney, Edgar Smith, stating his reasons for changing the locks.

When lawmen arrived, Plaintiff was away. At some point, Welch returned and again changed the locks on the unit, this time removing all furnishing owned by Plaintiff, transporting said items (lamps, bedroom set, television, artwork, clothes, etc.) to an undisclosed location,2 unknown to Plaintiff for

ensuing months.  Plaintiff again changed the lock after writing a second letter to Welsh's counsel.
Nonetheless, law enforcement personnel converged on the grounds, i.e., at least three (3) uniformed
and two (2) plain clothed and restored Welch onto the property, threatening to jail a friend of Plaintiff
who was in the condo unit for burglary/criminal trespass. See Exhibits #7, #8,

Plaintiff sued in District Court for Clark County (District Court Case No. **A-09-593781-C**) alleging lack of
notice. The case was removed to Federal Court (Honorable Kent J. Dawson, Case No. **2:09-cv-01556-
KJD-PAL**) but subsequently bound back over to the County court, which ruled against Plaintiff.
Defendant Welch had prior to the County's Court's ruling against Plaintiff in early 2010, agreed to pay
Plaintiff several thousand dollars for the stolen artwork. However, upon the adverse ruling, Defendant
Welch, apparently emboldened, refused to pay Plaintiff, effectively repudiating the agreement to do so.
ON April 28, 2010, the County Court ordered expungement of *lis pendens* Plaintiff had recorded on the
property. See Exhibit #9. On July 21 2010, Welch/RRR HOMES purportedly sold the property at a profit.
See Exhibit #10.

PLAINTIFF SUBMITS THE INSTANT COMPLAINT UPON RECENT REVELATIONS AND DISCOVERY THAT NO
FORECLOSURE ON HIS UNIT AT 2220 VILLAGE WALK DRIVE #3211, Henderson, Nevada, 89052, EVER
OCCURRED – AND THAT THE TRUSTEE'S DEED UPON SALE ISSUED TO RYAN WELCH/RRR HOMES IS A
FORGERY, i.e., FALSE MAKING, i.e., a FABRICATED DOCUMENT THAT NEVER PASSED LEGAL TITLE - AND
THAT THE TRUSTEE THAT ISSUED THE  INSTRUMENT (FOR/ ON BEHALF OF A FALSE OR NON-EXISTENT
BENEFICIARY OWED NO MONEY) WAS SELF-APPOINTED AND THUS UNAUTHORIZED TO DO SO.
ON THIS PREMISE, AND FOR ADDITIONAL REASONS GIVEN BELOW, PLAINTIFF MICHAEL HARKEY RETAINS
SUPERIOR TITLE TO THE PROPERTY KNOWN AS 2220 VILLAGE WALK DRIVE, UNIT #3211, Henderson,
Nevada, 89052, APN # 178-19-611-062.


**THE PLAINTIFF and the MULTIPLE MERS ENTITIES in RELATION  to the SUBJECT MATTER**

3. Plaintiff, MICHAEL HARKEY, hereinafter HARKEY or PLAINTIFF, was at all times relevant hereto a
property owner seized of title to real estate located in the County of Clark, State of Nevada, and is the
lawful record owner of 2220 Village Walk Drive, Unit 3211, Henderson, Nevada 89052 (hereinafter the

---

2 To date, Plaintiff has never removed them in protest that, when he was finally told of the whereabouts of his
belongings through his attorney, only after being made to pay storage fees of hundreds of dollars, his artwork was
missing.

"subject property" under the Grant, Bargain, and Sale Deed (Deed) attached hereto as Exhibit #9, who personal and property rights were violated by the acts complained of herein.

4. Defendant MORTGAGE ELECTRONIC RESISTRATION SYSTEMS is central to much of the illegality(s) encompassing and entailing contraventions, transgressions of Law and The constitution, all of which were visited upon/committed against Plaintiff by the corporate Defendants, as well as certain among the individual (natural) Defendants, amounting to among other causes of action:  Nevada RICO, Fraud (Common Law) , Conspiring o Defraud, Civil aiding and abetting in the Commission of a Tort, CONCERT OF ACTION, GRAND LARCENY, INTENTIONAL INTERFERENCE WITH RIGHTS, NEGLIGENT MISREPRESENTATION, OFFERING AND FILING OF FICTITIOUS INSTRUMENTS FOR RECORD3,4,5,6, MAIL FRAUD, WIRE FRAUD, FORGERY, CIVIL CONSPIRACY, INTIMIDATION, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, PERPETUATION OF FRAUD UPON THE COURT, AND BID RIGGING AT AUCTION (between the false Trustee and purported Bidder/Purchaser), ACCESSORY LIABILITY,  WARRANTING QUIET TITLE, DAMAGES: ACTUAL, COMPENSATORY, and EXEMPLARY/PUNITIVE, among other relief.

1...MERSCORP-THE head and pulse which controls the MERS system; its acronym, MERS,  though long used deceptively, and quite successfully, is the very same as:

2 ...MORTGAGE ELECTRONIC REGISTRATION SYSTEMS- A WHOLLY OWNED SEPARATE, BANKRUPTCY REMOTE COMPANY WHICH HAS NO EMPLOYEES, AND, HENCE NO HUMAN INTELLIGENCE, AND NO MEMBERS, IS ALSO THE SAME AS:

3...THE MERS SYSTEM ITSELF, WHICH, OWNED AND OPERATED BY MERSCORP, FIGURES PROMINENTLY IN A CAVALCADE OF ILLEGALITY...The MERS that has so ubiquitously appeared on so many millions of mortgages and other instruments related to real property transactions in this nation is the bankruptcy remote vehicle...FROM A LEGAL STANDPOINT, IT CANNOT BE MERSCORP BECAUSE THAT ESTEEMED COMPANY NAME IS NOT EVER EXPRESSLY SPELLED OUT IN ANY CONTRACT/MORTGAGE/DEED OF TRUST...The trickery advanced by way of the interspersal of the three entities' acronym has spawned criminal and civil fraud and deceit on an industrial scale unlike anything prior to its emergence..The

---

3 NRS 204.470

4 NRS 205.395

5 NRS 239.330

6 NRS 111.175

willingness to lie and deceive is so rife on the part of this behemoth, in alliance with the banks and servicers, agents, etc that so readily use it, that an examination in the courts from coast to coast in this country, whether State, Federal, or Bankruptcy Court, reveals immensely inconsistent versions of authority vested to it, all the while without specifically identifying which among the MERS entities identified above actually enjoys these vaunted entitlements....IN THIS CASE, Mortgage Electronic Registration Systems, Inc., its successors and assigns, purportedly FOR VALUE RECEIVED, was granted, assigned, and transferred all beneficial interest, together with the note or notes therein, in Plaintiff's deed of trust on his property...This instrument, recorded in September, 2006, is a falsehood, inasmuch as the assignee COULD NOT be, unlike MERSCORP, a creditor...See Exhibit #10

MERS accounts of its range of authority widely vary from court to court around the country, HEAPING CONFUSION UPON CONFUSION

This headless, mindless, human-less vortex through whose utility many lives have been eviscerated at the hands of avaricious, greedy, financial organizations and their leaders, aiders, abettors, and minions, without doubt, is the vehicle which has led to the disembowelment of the trustworthiness once upon a time accorded all public records on title to real property throughout this great land of The United States of America...

### NEVADA RICO

Plaintiff alleges that all of the Defendants, excepting for Jedlicki, Krejkiewicz, Sand, and Community Excellence engaged in Racketeering in Violation of NRS 207.470 (Nevada State RICO) by the acts complained of7

> FORGERY – OFERING OF FALSE
> INSTRUMENTS FOR FILING
> IN THE PUBLIC RECORD,
> FALSE CERTIFICATION OF
> CERTAIN INSTRUMENTS
> FALSE TRANSFERS, CONVEYANCES

---

7 Plaintiff will supplement his claims for the Court's trenchant enlightenment and analysis.

CIVIL COMPLAINT                              6 of 10                    Michael Harkey, Plaintiff, *pro se*
                                                                       9101 West Sahara #105
                                                                       Las Vegas Nevada 89117

Plaintiff alleges that Defendants, excepting for Sand and Community Excellence, filed fake documents in the public record, falsely laying claim to Plaintiff's property, in violation of NRS 205.395, 239.330, 205.120 and 111. 175.

### MAIL FRAUD – WIRE FRAUD

Plaintiff alleges that Defendants in the commission of unlawfulacts against him and his property, did so through the use of the mail and wire systems, in violation of 18 USC §1341 and 18 USC §1343.

### COMMON LAW FRAUD

### CONSPIRACY TO DEFRAUD

Plaintiff alleges that all of the Defendants, excepting for Jedlicki, Krajkiewcz, Sand, and Community Excellence, engaged in acts constituting Common Law Fraud and Conspiring to Defraud against Plaintiff.

### NEGLIGENT MISREPRESENTATION

Plaintiff, on the basis of the acts complained of, alleges that all of the Defendants, excepting for RRR Homes, Welch, Ferradino, Jedlicki, Sand, Krajkiewcz, and Community Excellence, engaged in conduct constituting negligent misrepresenting, and are liable for Plaintiff's losses as the result of the false documents negligently executed by them, and should any of the Defendants named herein be found to have committed fraud or oppression (in this instant, Defendants RYAN WELCH, SARA FERRADINO, and RRR Homes are enjoined as oppressionists and antagonists), relief will be sought by way of exemplary damages as allowed by NRS 42.005.

### RIGGED BIDDING/COLLUSION

Plaintiff alleges this conspiratorial engagement only between Defendants Executive Trustee Services,[8] Myron Ravelo, Patricia Babb, RRR Homes, and Ryan Welch.

### UNJUST ENRICHMENT

Plaintiff alleges unjust enrichment exclusively against Defendants Homecomings Financial[9], RRR Homes, Ryan Welch, Jedlicki, and Krajkiewcz. This is because Homecomings received approximately $5,400 - $5,500 monthly from Plaintiff during summer 2006 – December, 2007, monies to which it was not

---

8,[9] These Defendants are in Bankruptcy Court, S.D.N.Y., and are named only for informational purposes, but executive's minions/employees are named in their employee capacity and individually.

entitled; RRR Homes and Welch's false resale of Plaintiff's property on July 21, 2010 constituted the final overt act of their complicity in the overall conspiracy to defraud, as well as the RICO activities, in which these Defendants were a part of; Jedlicki, and Krajkiewcz, for their part must return all monies enjoyed/received by way of Plaintiff's property having been leased out by these two Defendants over a time as yet undetermined.

### INTENTIONAL INTERFERENCE WITH RIGHTS –

### USE OF INTIMIDATION TACTICS

### IN FURTHERANCE OF THWARTING A KNOWN RIGHT

Defendants RRR Homes and Ryan Welch as exclusively alleged as the transgressor whose conduct against Plaintiff and his property constitute the above identified tort based on the information provided herein.

### QUIET TITLE

Plaintiff, on the basis of the illegalities that have belabored him, traumatized him, and deprived him of his home for years now, seeks JUDGMENT QUIETING TITLE IN FAVOR OF PALINTIFF PURSUANT TO NRS 40.010, and REQUESTS a DECLARATORY JUDGMENT QUIETING TITLE TO 2220 Village Walk Drive, Unit 3211, Henderson, Nevada 89052.

IN LIGHT OF THE PASSAGE OF TIME THE DURATION OF WHICH PLAINTIFF WAS DENIED HIS LAWFUL RIGHT TO ACCESS TO AND ENJOYMENT OF A HOME TO WHICH HE HOLDS THE ONLY TRUE, VALID TITLE, Plaintiff request the Court's indulgence to set a just and proper Damages award, actual, compensating, and EXEMPLARY for all that the Defendant's jointly and severally, have wrought on Plaintiff's life.

**Plaintiff reserves his right to amend or supplement his Complaint as well as court files/records**

### VERIFICATION AS TO QUIET TITLE ACTION

Plaintiff Michael Harkey declares under penalty of perjury, pursuant to 28 USC § 1746 that the facts stated in his cause of action for QUIET TITLE are true and correct, to the best of his first-hand knowledge, information, and belief.

Submitted with respect for the law this 20th day of July, 2015,

**Michael Harkey**, Pro Se  Plaintiff

CIVIL COMPLAINT                              8 of 10                    Michael Harkey, Plaintiff, *pro se*
9101 West Sahara  #105
Las Vegas Nevada 89117

INSERTIONS:

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

Plaintiff alleges that Defendant's actions by their very nature, inflicted intentionally, emotional despair upon him, and that Defendants RRR Homes, Welch and Ferradino, did so especially opprobriously and condescendingly.  These three(3) Defendants exclusively intentionally sought to, during the course of the conspiracy to defraud Plaintiff of his home, derail his efforts to retain possession of his home – after what is now known to have been acts void under the law, acts undertaken against him and his property by a self-appointed, unauthorized trustee.  The three Defendants, in addition, removed Plaintiff's furniture and other personal effects, including artwork which they refused to return to Plaintiff, and then called on law enforcement personnel to deflect Plaintiff's efforts to maintain the lawful entitled possession of his property resorting to intimidation tactics and brute force to keep Plaintiff off of his property, property now known to have never been a product of foreclosure, property to which these three Defendants NEVER ACQUIRED a Writ of Restitution to LAWFULLY access in  any event.

The three Defendants kept from Plaintiff his furniture and other belongings for months, refusing to disclose the whereabouts thereof until Plaintiff's attorney submitted o their attorney, Edgar Smith, a check for several hundred dollars that these Defendants demanded.  Upon finally seeing his property again, which had been transported and place in a mini-storage, valuable unique oriental artwork was missing and to this day, remains unaccounted for.

**CIVIL AIDING AND ABETTING—**

Plaintiff identifies all of the named DEFENDANTS in the OVERALL SCHEME to defraud him, except for SAND, COMMUNITY EXCELLENCE, JEDLICKI, AND KRAJKIEWCS...Plaintiff does name SAND and COMMUNITY EXCELLENCE as DEFENDANTS, however, to the extent they aided and abetted DEFENDANTS RRR HOMES AND WELCH when they interjected in RRR HOMES AND WELCH'S favor, that DEFENDANT SAND 'saw the deed' and that Plaintiff should probably leave...DEFENDANTS SAND and COMMUNITY EXCELLENCE were unaware that despite the deed WELCH wielded, which is now known to have never passed good, lawful title to Welch, a court-ordered Writ of Restitution was required in order for WELCH and RRR HOMES to lawfully wrest possession of the premises from Plaintiff...This aiding and

abetting on the part of DEFENDANTS SAND and COMMUNITY EXCELLENCE also gives rise to a cause of action for NEGLIGENCE

## CONCERT OF ACTION

Plaintiff, on the basis of the foregoing account of events revolving around the unlawful actions undertaken against him, alleges concert of action, but exclusively against Defendant RRR Homes, Welch, Ravelo and Babb.

Dated this 20ᵗʰ Day of July,
2015

Michael Harkey

CIVIL COMPLAINT                    10 of 10                    Michael Harkey, Plaintiff, *pro se*
9101 West Sahara #105
Las Vegas Nevada 89117

# Exhibit # 1

20060112-0004134

Fee: $38.00
N/C Fee: $0.00

01/12/2006        13:59:39
T20060008090
Requestor:
NEVADA TITLE COMPANY

Frances Deane            JKA
Clark County Recorder    Pgs  25

Assessor's Parcel Number:
178-19-611-062
Return To: New Century Mortgage
Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612

Prepared By: New Century Mortgage
Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612
Recording Requested By: New Century
Mortgage Corporation
18400 Von Karman, Ste 1000
Irvine, CA 92612

05-12-1366-KJR _____ [Space Above This Line For Recording Data] ____

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   December 28, 2005
together with all Riders to this document.
(B) "Borrower" is MICHAEL E. HARKEY, A Single Man

Borrower is the trustor under this Security Instrument.
(C) "Lender" is New Century Mortgage Corporation

Lender is a Corporation
organized and existing under the laws of California

1005565845

NEVADA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3029 1/01

-6(NV) (0307).01
Page 1 of 15        Initials: _____
VMP Mortgage Solutions (800)521-7291

Lender's address is 18400 Von Karman, Suite 1000, Irvine, CA 92612

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is NEVADA TITLE

(E) "Note" means the promissory note signed by Borrower and dated December 28, 2005
The Note states that Borrower owes Lender SEVEN HUNDRED SIXTY THOUSAND AND 00/100

Dollars

(U S $ 760,000.00        ) plus interest  Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than 01/01/2036

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower  The following
Riders are to be executed by Borrower [check box as applicable]:

[x] Adjustable Rate Rider  [x] Condominium Rider           [ ] Second Home Rider
[ ] Balloon Rider          [ ] Planned Unit Development Rider [ ] 1-4 Family Rider
[ ] VA Rider               [ ] Biweekly Payment Rider        [x] Other(s) [specify]
                                                             Prepayment Rider
                                                             ARM Rider Addendum

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account  Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq ) and its
implementing regulation, Regulation X (24 C F R  Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

1005565845

Initials: MX

-6(NV) (0307).01          Page 2 of 15          Form 3029  1/01

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

County                                    of                                    Clark                                    :
  [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]
See Legal Description Attached Hereto and Made a Part Hereof

Parcel ID Number: 178-19-611-062                         which currently has the address of
2220 VILLAGE WALK DRIVE BUILDING 3 #3211                                              [Street]
Henderson                                            [City], Nevada 89052          [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items

1005565845

Initials: MYd

-6(NV) (0307) 01                         Page 3 of 15                         Form 3029  1/01

pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3 Such payments shall be applied to each Periodic Payment in the order in which it became due Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time Any such waiver may only be

1005565845

Initials: _YUYL_

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

1005565845

Initials: MXL

-6(NV) (0307).01                    Page 6 of 15                     Form 3029  1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim  The 30-day period will begin when the notice is given  In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property  Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition  Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property  Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

1005565845

Initials: _MM_

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

Initials: _MCyl_

1005565845

-6(NV) (0307).01                    Page 9 of 15                    Form 3029  1/01

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender Borrower shall promptly notify Lender of Borrower's change of address If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

1005565845

Initials: _MA_

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred However, this right to reinstate shall not apply in the case of acceleration under Section 18

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the 'Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be

1005565845

Initials: _Y̌LᵍℓI_

**-6(NV)** (0307).01                   Page 11 of 15                   Form 3029   1/01

one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products)

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary. Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Initials: _MJ&_                    1005565845

@ -6(NV) (0307).01              Page 12 of 15              Form 3029  1/01

NON-UNIFORM COVENANTS  Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option, and without further demand, may invoke the power of sale, including the right to accelerate full payment of the Note, and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Assumption Fee. If there is an assumption of this loan, Lender may charge an assumption fee of U S $2,500.00

Initials: _MYL_

1005565845

-6(NV) (0307) 01          Page 13 of 15          Form 3029  1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____       _Mukund E. Harkey_____ (Seal)
                                          MICHAEL E. HARKEY              -Borrower

_____       _____ (Seal)
                                                                        -Borrower

_____ (Seal)          _____ (Seal)
              -Borrower                                                 -Borrower

_____ (Seal)          _____ (Seal)
              -Borrower                                                 -Borrower

_____ (Seal)          _____ (Seal)
              -Borrower                                                 -Borrower

                                                            1005565845

VMP -6(NV) (0307) 01            Page 14 of 15            Form 3029  1/01

STATE OF NEVADA
COUNTY OF ᏟᏂᎪᏞᏦ

This instrument was acknowledged before me on DECEMBER 30, 2005 by
MICHAEL E. HARKEY



DARLENE Y. SMITH
Notary Public State of Nevada
No. 03-81560-1
My appl. exp. May 1, 2007

Darlene Smith

Mail Tax Statements To:
MICHAEL E. HARKEY
2220 VILLAGE WALK DRIVE BUILDING 3 #3211
Henderson, NV  89052

1005565845

Initials: MM

-6(NV) (0307).01                    Page 15 of 15                    Form 3029  1/01

Escrow No : 05-12-1366-KJR

## EXHIBIT "A"

## LEGAL DESCRIPTION

### PARCEL ONE (1) – UNIT:

LIVING UNIT 3211, IN BUILDING 3 AS SHOWN ON THE FINAL MAP OF THE DISTRICT AT GREEN VALLEY RANCH, A CONDOMINIUM SUBDIVISION AND COMMON INTEREST COMMUNITY, ON FILE IN BOOK 119 OF PLATS, PAGE 7, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA (HEREINAFTER THE "PLAT").

### PARCEL TWO (2) – COMMON ELEMENTS:

1/88TH INTEREST AS A TENANT-IN-COMMON IN THE COMMON ELEMENTS SHOWN ON THE PLAT, IN ACCORDANCE WITH AND SUBJECT TO THE TERMS OF THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR THE CONDOMINIUMS AT THE DISTRICT RECORDED SEPTEMBER 27, 2004, IN BOOK 20040927 AS DOCUMENT NO 0005038 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA (HEREINAFTER THE "DECLARATION").

EXCEPTING THEREFROM, ALL UNITS SHOWN ON THE PLAT.

RESERVING THEREFROM, THE RIGHT TO USE ANY OF THOSE AREAS DESIGNATED AS LIMITED COMMON ELEMENTS IN THE PLAT AND/OR THE DECLARATION.

FURTHER RESERVING THEREFROM, FOR THE BENEFIT OF THE OWNERS OF ALL UNITS SHOWN ON THE PLAT (EXCEPT THE UNIT REFERRED TO IN PARCEL ONE (1) ABOVE), NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, USE, ENJOYMENT AND OTHER PURPOSES ON, OVER AND ACROSS THE COMMON ELEMENTS, AS DEFINED IN, AND SUBJECT TO THE DECLARATION.

### PARCEL THREE (3) – LIMITED COMMON ELEMENTS:

THE EXCLUSIVE RIGHT TO USE, POSSESS AND OCCUPY THE FOLLOWING, SUBJECT TO THE TERMS AND PROVISIONS OF THE DECLARATION:

PARKING SPACE NUMBER: LCE-P-#17; AND

STORAGE SPACE NUMBER: LCE-#27,

ALL OF WHICH ARE DESCRIBED AS LIMITED COMMON ELEMENTS IN SECTION 5.2(a) AND 5.3(a) OF THE DECLARATION AND WHICH ARE APPURTENANT TO PARCELS ONE (1) AND TWO (2) DESCRIBED ABOVE.

TOGETHER WITH THE EXCLUSIVE RIGHT TO USE, POSSESS AND OCCUPY THE FOLLOWING, SUBJECT TO THE TERMS AND PROVISIONS OF THE DECLARATION:

PARKING SPACE NUMBER: LCE-P-#18; AND

STORAGE SPACE NUMBER: LCE--#28,

ALL OF WHICH ARE HEREBY ASSIGNED AS LIMITED COMMON ELEMENTS IN ACCORDANCE WITH SECTION 5.2(b) AND/OR 5.3(b), AS APPLICABLE, OF THE DECLARATION AND WHICH ARE APPURTENANT TO PARCELS ONE (1) AND TWO (2) DESCRIBED ABOVE

TOGETHER WITH THE AREAS DESIGNATED AS LIMITED COMMON ELEMENTS, ALLOCATED TO PARCELS ONE (1) AND TWO (2) IN THE DECLARATION.

**PARCEL FOUR (4) – APPURTENANT EASEMENTS:**

NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, USE, ENJOYMENT AND OTHER PURPOSES ON, OVER AND ACROSS THE COMMON ELEMENTS AS DEFINED IN AND SUBJECT TO THE DECLARATION, WHICH EASEMENTS ARE APPURTENANT TO PARCELS ONE (1), TWO (2) AND THREE (3) ABOVE.

# EXHIBIT # 2A



20080512-0002747

Fee: $15 00
N/C Fee: $0.00

05/12/2008          13:57:22
T20080085800
Requestor:
FIDELITY NATIONAL DEFAULT SOLUTIONS TU

Debbie Conway          JLB
Clark County Recorder  Pgs: 2

15661 RED HILL AVENUE, SUITE 201
TUSTIN, CA 82780
AND WHEN RECORDED MAIL TO:
Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

43

APN: 178-19-611-062
T S No.: GM-141249-C   Loan No : 7441078532

TRU5276

SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY

## NOTICE OF BREACH AND DEFAULT AND OF ELECTION TO CAUSE SELL OF REAL PROPERTY UNDER DEED OF TRUST

**NOTICE IS HEREBY GIVEN THAT: EXECUTIVE TRUSTEE SERVICES, LLC** is the duly appointed Trustee under a Deed of Trust dated **12/28/2005**, executed by **MICHAEL E. HARKEY, A SINGLE MAN**, as trustor in favor of **NEW CENTURY MORTGAGE CORPORATION**, recorded **1/12/2006**, under instrument no. **20060112-0004134**, in book , page , of Official Records in the office of the County recorder of **Clark, County, Nevada** securing, among other obligations.

One note(s) for the Original sum of $760,000.00, that the beneficial interest under such Deed of Trust and the obligations secured hereby are presently held by the undersigned; that a breach of and default in the obligations for which such Deed of Trust is security has occurred or that payment has not been made of:

**Installment of Principal and Interest plus impounds and/or advances which became due on 1/1/2008 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.**

That by reason thereof the present Beneficiary under such deed of Trust has executed and delivered to said duly appointed Trustee a written Declaration of Default and Demand for Sale and has deposited with said duly appointed Trustee such Deed of Trust and all documents evidencing obligations secured thereby and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

(PAGE 1 of 2)

T.S. No.: GM-141249-C                    Loan No.: 7441078532

## NOTICE

You may have the right to cure the default hereon and reinstate the one obligation secured by such Deed of Trust above described. Section NRS 107.080 permits certain defaults to be cured upon the Payment of the amounts required by that statutory section without requiring payment of that portion of principal and interest which would not be due had no default occurred. Where reinstatement is possible, if the default is not cured within 35 days following recording and mailing of this Notice to Trustor of Trustor's successor in interest, the right of reinstatement will terminate and the property may thereafter be sold. The Trustor may have the right to bring a court action to assert the nonexistence of a default or any other defense of Trustor to acceleration and Sale.

**To determine if reinstatement is possible and the amount, if any, to cure the default, contact:**

MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC.
C/O Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
(818) 260-1600 phone

Dated: **5/9/2008**

Executive Trustee Services, LLC As Agent for
Beneficiary

By: _____
Maricela Garcia, Limited Signing Officer

State of   California      } SS.
County of Los Angeles  }

On 5/9/2008 before me, **Myron Ravelo** Notary Public, personally appeared **Maricela Garcia** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature _____   (Seal)
Myron Ravelo

(PAGE 2 OF 2)

MYRON RAVELO
Commission # 1763787
Notary Public - California
Los Angeles County
My Comm. Expires Aug 26, 2011

# EXHIBIT # 2B

Executive Trustee Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120 ·
(818) 260-1600

Date: 5/21/2008

T.S. Number:    GM-141249-C
Loan Number:  7441078532

# DEBT VALIDATION NOTICE

1.  **The enclosed document relates to a debt owed to the current creditor:**

    **MORTGAGE ELECTRONIC REGISTRATION SYSTEM, INC.**

    **You may send us a written request for the name and address of the original creditor, if different from the**
    current creditor, and we will obtain and mail the information to you.

2.  **As of 5/9/2008 the total delinquency owed was $38,017.47, but this amount will increase until the delinquency has been fully cured.**

3.  **As of 5/21/2008, the amount required to pay the entire debt in full was $777,161.10, but this amount will increase daily until the debt has been fully paid.**

4.  **You may dispute the validity of this debt, or any portion thereof, within thirty (30) days after receiving this notice.  Otherwise, we will assume that the debt is valid.**

5.  **If you notify us in writing that you dispute all or any portion of this debt within thirty (30) days after receiving this notice, we will obtain and mail to you verification of the debt, or a copy of any judgement against you.**

> ### WE ARE ATTEMPTING TO COLLECT A DEBT, AND ANY INFORMATION
> ### WE OBTAIN WILL BE USED FOR THAT PURPOSE



# EXHIBIT # 3

# EXHIBIT # 4

# EXHIBIT # 5

20090505-0004896

Fee: $15.00    RPTT: $0.00
N/C Fee: $25.00
05/05/2009    14:57:04
T20090156723
Requestor:
   FIDELITY NATIONAL DEFAULT SO
Debbie Conway        DBX
Clark County Recorder    Pgs: 2

RECORDING REQUESTED BY:
**Executive Trustee Services, LLC**

AND WHEN RECORDED MAIL TO:
**Executive Trustee Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, California 91504-3120**

APN: 178-19-611-062
T S. No. GM-141249-C
Loan No. 7441078532    T865276

SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 12/28/2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state, will be held by the duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to satisfy the obligation secured by said Deed of Trust. This property is sold as-is, lender is unable to validate the condition, defects or disclosure issues of said property and Buyer waives the disclosure requirements under NRS 113.130 by purchasing at this sale and signing said receipt. The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein.

TRUSTOR:**MICHAEL E. HARKEY, A SINGLE MAN**
Recorded 1/12/2006 as Instrument No. 20060112-0004134 in Book , page  of  Official Records in the office of the Recorder of **Clark** County, Nevada,
Date of Sale: 6/8/2009 at 10:00 AM
Place of Sale:  **At the Nevada Legal News located at 930 S. 4th Street, Las Vegas, Nevada**
Property Address is purported to be:    **2220 VILLAGE WALK DRIVE BUILDING 3 #3211**
                                        **HENDERSON, Nevada 89052**

The total amount secured by said instrument as of the time of initial publication of this notice is **$818,212.75**, which includes the total amount of the unpaid balance (including accrued and unpaid interest) and reasonable estimated costs, expenses, and advances at the time of initial publication of this notice.

Date: 5/4/2009

Executive Trustee Services, LLC,
2255 North Ontario Street, Suite 400,
Burbank,California 91504-3120
Sale Line: 714-730-2727

Ileanna Petersen, Limited Signing Officer

**State of   California     } SS.**
**County of Los Angeles   }**

On **5/4/2009** before me, **Christine E. Gomez-Schwab** Notary Public, personally appeared **ILEANNA PETERSEN** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
          Christine E. Gomez-Schwab

CHRISTINE E. GOMEZ SCHWAB
Commission # 1651121
Notary Public - California
Los Angeles County
My Comm. Expires Mar 12, 2010

# EXHIBIT # 6

# EXHIBIT # 7

Michael Harkey
2220 Village Walk Dr. #3211
Henderson, NV

July 25, 2009

Edgar Smith, Esq.

RE:    2220 Village Walk Dr. #3211, Henderson, NV

Dear Mr. Smith:

As I have stated all along, I am the owner of 2220 Village Walk Dr., #3211, Henderson, Nevada, and this was an improper foreclosure. I am filing an Amended Complaint in this matter. In any event, I am in possession of this property. Your client claims to have purchased the property at a foreclosure sale and claims to have acquired title. That does not allow your client to use "self help" to try to dispossess me. If your client feels that he is entitled to possession of the property, he must go through the appropriate legal process to gain possession. A deed is not enough. He does not have a Writ of Possession or any other court-issued order which grants him possession or the right to dispossess me. Furthermore, your client's conclusion that I am not in possession of the property because he observed that some dust had accumulated is absolutely incorrect, and speaks more as to my lack of time for housekeeping than anything else. I dispute this conclusion.

Your client has no right to change my locks. Your client has no right to remove my furnishings or other personal property, or to threaten to remove same, or to threaten to consider same to be abandoned property. Your client has no right to possess the property. When your client chose to bid for the property at a foreclosure sale, he should have been aware that the mere tendering of a deed to him does not give him possession, and he should have been aware that he would have to acquire possession by legal process even after he acquired a deed.

Please be advised that I shall be replacing the locks. I must insist that your client not enter into or onto this property until such time as he obtains the proper Writ of Possession which he can only obtain after a proper summons/complaint is issued and considered by the court upon notice and hearing. I will abide by a court order if and when your client obtains one. Until that time occurs (if it even does occur), any entry onto the property by your client or his agents is a criminal act of trespass, and any interference with my personal property is a criminal act of theft and/or burglary. I will also pursue any appropriate civil action (e.g., conversion, trespass) against both you and your client.

Please be guided accordingly.

Very truly yours,

Michael Harkey

cc:    Ms. Luce, Homeowner's Association
       Kim Sand, District Onsite Property Manager
       Constable's Office
       Henderson Police Dept.

# EXHIBIT # 8

# EXHIBIT # 9

CIVIL COMPLAINT

Electronically Filed
04/29/2010 11:59:58 AM

*[signature]*

CLERK OF THE COURT

1  **ORDR**
   Edgar C. Smith, Esq.
2  State Bar No. 5506
   LAW OFFICE OF EDGAR C. SMITH
3  7371 Prairie Falcon Road, Suite 120
   Las Vegas, Nevada 89128
4  (702) 388-0040
5  Attorney for Defendant and Counter-claimant RRR HOMES, LLC

6                    **EIGHTH JUDICIAL DISTRICT COURT**

7                         **CLARK COUNTY, NEVADA**

8                                  *****

9  MICHAEL HARKEY,                    :  Case No.: A-09-593781

10                                    :  Dept. No.: XVIII
           Plaintiff,                 :
11     vs.                            :  Hearing Date: April 8, 2010
                                      :  Hearing Time: 8:15 a.m.
12  RRR HOMES, LLC; NEW CENTURY       :
    MORTGAGE CORPORATION; EXECUTIVE   :
13  TRUSTEE SERVICES, LLC; EXECUTIVE  :
    TRUSTEE SERVICES, INC.; HOMECOMING :
14  FINANCIAL, LLC, and DOES I through X, :
    inclusive,                        :
15                                    :
           Defendants                 :
16                                    :
17  AND RELATED COUNTERCLAIM          :

18          **ORDER ON DEFENDANT RRR HOMES, LLC'S MOTION**

                **TO CANCEL AND EXPUNGE LIS PENDENS**

19

20      The motion of Defendant RRR Homes, LLC came on for hearing before this Court on April 8, 2010.
    There was no appearance by the Plaintiff or for the movant.

21      The Court, having considered the motion and opposition and reply thereto, and after due deliberation

22  thereon; and the Court having granted the motion for summary judgment filed by Defendants Executive

23  Trustee Services, Inc. and Homecoming Financial, LLC, and RRR Homes, LLC having filed a joinder

24  thereto;

25      The Court finds as follows:

26      1.  The order granting summary judgment effectively removes the issue of title from this action and

27         therefore this suit is no longer one affecting title to real property under NRS 14.015 subsection 1;

    ///
28

                                    -1-

2. The Plaintiff has not demonstrated to the satisfaction of the Court that the Plaintiff would be injured by any transfer of an interest in the property before the action is concluded, pursuant to NRS 14.015(2)(d);

3. The Plaintiff has not demonstrated he will likely prevail in the action or that he has a fair chance of success on the merits and the injury described in paragraph (d) of subsection 2 of NRS 14.015 would be sufficiently serious that the hardship imposed on Plaintiff would be greater than the hardship on the Movant;

4. The Plaintiff bears the burden of proof on these issues under NRS 14.015 subsection (3) so that the motion should be granted.

Ordered,

The motion of RRR Homes, LLC is granted. The lis pendens that was filed and then recorded in Book 20090608 as instrument #0004133, Official Records of Clark County, Nevada (a copy of which is attached as Exhibit 1 hereto[1]) is hereby cancelled and ordered expunged from the title to the real property commonly known as 2220 Village Walk Drive, Bldg. #3, Unit 3211, Henderson, Nevada and more fully described as follows:

PARCEL ONE (1) - UNIT:

LIVING UNIT 3211. IN BUILDING 3 AS SHOWN ON THE FINAL MAP OF THE DISTRICT AT GREEN VALLEY RANCH, A CONDOMINIUM SUBDIVISION AND COMMON INTEREST COMMUNITY, ON FILE IN BOOK 119 OF PLATS, PAGE 7. IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA (HEREINAFTER THE "PLAT").

PARCEL TWO (2) - COMMON ELEMENTS:

1/88TH INTEREST AS A TENANT-IN-COMMON IN THE COMMON ELEMENTS SHOWN ON THE PLAT, IN ACCORDANCE WITH AND SUBJECT TO THE TERMS OF THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR THE CONDOMINIUMS AT THE DISTRICT RECORDED SEPTEMBER 27, 2004, IN BOOK 20040927 AS DOCUMENT NO. 0005038 IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA (HEREINAFTER THE "DECLARATION").

EXCEPTING THEREFROM, ALL UNITS SHOWN ON THE PLAT.

RESERVING THEREFROM, THE RIGHT TO USE ANY OF THOSE AREAS DESIGNATED AS LIMITED COMMON ELEMENTS IN THE PLAT AND/OR THE DECLARATION.

---

[1] The caption on the Notice of Lis Pendens is erroneous because it references a different case, but the property described in the body of the Notice is the property that is the subject of this action.

-2-

FURTHER RESERVING THEREFROM, FOR THE BENEFIT OF THE OWNERS OF ALL UNITS SHOWN ON THE PLAT (EXCEPT THE UNIT REFERRED TO IN PARCEL ONE (1) ABOVE), NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, USE, ENJOYMENT AND OTHER PURPOSES ON, OVER AND ACROSS THE COMMON ELEMENTS, AS DEFINED IN, AND SUBJECT TO THE DECLARATION.

PARCEL THREE (3) - LIMITED COMMON ELEMENTS:

THE EXCLUSIVE RIGHT TO USE, POSSESS AND OCCUPY THE FOLLOWING, SUBJECT TO THE TERMS AND PROVISIONS OF THE DECLARATION:

PARKING SPACE NUMBER: LCE-P-#17; AND

STORAGE SPACE NUMBER: LCE-#27,

ALL OF WHICH ARE DESCRIBED AS LIMITED COMMON ELEMENTS IN SECTION S.2(A) AND 5.3(A) OF THE DECLARATION AND WHICH ARE APPURTENANT TO PARCELS ONE (1) AND TWO (2) DESCRIBED ABOVE

TOGETHER WITH THE EXCLUSIVE RIGHT TO USE, POSSESS AND OCCUPY THE FOLLOWING, SUBJECT TO THE TERMS AND PROVISIONS OF THE DECLARATION:

PARKING SPACE NUMBER: LCE-P-#18; AND
STORAGE SPACE NUMBER; LCE - #28,

ALL OF WHICH ARE HEREBY ASSIGNED AS LIMITED COMMON ELEMENTS IN ACCORDANCE WITH SECTION 5.2(6) AND/OR 5.3(B), AS APPLICABLE, OF THE DECLARATION AND WHICH ARE APPURTENANT TO PARCELS ONE (1) AND TWO (2) DESCRIBED ABOVE.

TOGETHER WITH THE AREAS DESIGNATED AS LIMITED COMMON ELEMENTS, ALLOCATED TO PARCELS ONE (1) AND TWO (2) IN THE DECLARATION.

PARCEL FOUR (4) - APPURTENANT EASEMENTS:

NON-EXCLUSIVE EASEMENTS FOR ACCESS, INGRESS, EGRESS, USE, ENJOYMENT, AND OTHER PURPOSES ON, OVER AND ACROSS THE COMMON ELEMENTS AS DEFINED IN AND SUBJECT TO THE DECLARATION, WHICH EASEMENTS ARE APPURTENANT TO PARCELS ONE (1), TWO (2) AND THREE (3) ABOVE.

(A.P.N. #178-19-611-062)

///
///
///
///
///

-3-

1    Upon entry of this Order, the Lis Pendens shall no longer affect the title to the property described.

2    No lis pendens hereafter filed and recorded by Plaintiff Michael Harkey that purports to affect the title to

3    the property described in this Order shall be effective for any purpose, unless Plaintiff first seeks and obtains

4    leave of Court for filing and recording the lis pendens, with written notice to counsel for Defendant RRR

     Homes, LLC.

5    Dated: April 28, 2010

6                                              Hon. David Barker
                                               EIGHTH JUDICIAL DISTRICT COURT
7                                              IN AND FOR CLARK COUNTY, NEVADA

8

9    Submitted by:

     LAW OFFICE OF EDGAR C. SMITH
10
     By: _____
11       EDGAR C. SMITH, ESQ.
         State Bar No. 5506
12       7371 Prairie Falcon Road, Suite 120
         Las Vegas, Nevada 89128
13       Attorney for RRR Homes, LLC

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-4-

# EXHIBIT # 10

Inst #: 201007230003349
Fees: $15.00 N/C Fee: $0.00
RPTT: $1504.50 Ex: #
07/23/2010 01:49:16 PM
Receipt #: 437890
Requestor:
FIDELITY NATIONAL TITLE LAS
Recorded By: BGN   Pgs: 3
DEBBIE CONWAY
CLARK COUNTY RECORDER

APN: 178-19-611-062
**RECORDING REQUESTED BY:**
Fidelity National Title
FT100027853 CLD

**When Recorded Mail Document
and Tax Statement To:**
Samantha M Jedlicki and
Leonard P Krajkiewcz
4935 Hillondale Avenue
Anchorage, AK 99516

RPTT: $1,504.50

## GRANT, BARGAIN, SALE DEED

THIS INDENTURE WITNESSETH: That RRR Homes, LLC, A Nevada LLC

FOR VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, do(es) hereby Grant, Bargain, Sell and

Convey to Samantha M. Jedlicki A Single Woman, as to an undivided 50% interest and Leonard P. Krajkiewcz A Single Man, as to an undivided 50% interest

all that real property situated in Clark County, State of Nevada, bounded and described as follows:

Parcel One (1)- Unit:

Living Unit 3211 in Building 3 as shown on the Final Map of The District At Green Valley Ranch, a Condominium Subdivision and Common Interest Community, on file in Book 119 of Plats, Page 7, in the Office of the County Recorder of Clark County, Nevada (hereinafter the "Plat") and amended by Certificate of Amendment recorded November 30, 2004 in Book 20041130 as Document No 04043, of Official Records

Parcel Two (2) - Common Elements:

A 1/88th interest as a tenant-in common in the Common Elements shown on the Plat, in accordance with and subject to the terms of the Declaration of Covenants, Conditions and Restrictions for The Condominiums At The District, recorded September 27, 2004 in Book 20040927 as Document No. 005038, in the Office of the County Recorder of Clark County, Nevada (hereinafter the "Declaration").

Excepting therefrom, all units shown on the Plat.

Reserving therefrom, the right to use any of those areas designated as Limited Common Elements on the Plat and/or the Declaration

Further reserving therefrom, for the benefit of the owners of all units shown on the Plat (except the unit referred to in Parcel One (1) above), non-exclusive easements for access, ingress, egress, use, enjoyment and other purposes on, over and across the Common Elements, as defined in, and subject to the Declaration

Parcel Three (3) - Limited Common Elements:

The exclusive right to use, possess and occupy the following, subject to the terms and provisions of the Declaration:

Storage Space Number: LCE-#27   Parking Space Number LCE-P-#17

all of which are described as Limited Common Elements in Section 5.2(a) and 5.3(a) of the Declaration and which are appurtenant to Parcels One (1) and Two (2) described above. Together with the Exclusive right to use, possess and occupy the following, subject to the terms and provisions of the Declaration:

Parking Space Number: LCE-P-#18; and

Storage Space Number: LCE-#28

all of which are described as Limited Common Elements in Section 5.2(a) and 5.3(a) of the Declaration and which are appurtenant to Parcels One (1) and Two (2) described above

Together with the areas designated as Limited Common Elements, allocated to Parcels One (1) and Two (2) in the Declaration

Parcel Four (4)- Appurtenant Easements:

Non-exclusive easements for access, ingress, egress, use, enjoyment and other purposes on, over and across the Common Elements as defined in and subject to the Declaration, which easements are appurtenant to Parcels One (1), Two (2) and Three (3) above.

SUBJECT TO:1.  Taxes for the fiscal year 2010-2011

         2.  Covenants, Conditions, Reservations, Rights, Rights of Way and Easements now of record.

Together with all and singular tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining.

DATED:  July 21, 2010

STATE OF Nevada

COUNTY OF Clark

I, Catherine L. Dean, a Notary Public of the County and State first above written, do hereby certify that RRR Homes, LLC, A Nevada LLC personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and official seal, this the 22nd day of July, 2010

_Catherine L. Dean_
Notary Public

My Commission Expires:  12/08/11

(SEAL)

RRR Homes, LLC, A Nevada LLC
BY: _Ryan Welch_
Ryan Welch, Managing Member

08-5353-1

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
CATHERINE L. DEAN
Appt. No. 08-5353-1
My Appt. Expires Dec. 8, 2011

CATHERINE L DEAN
12-08-2011

## STATE OF NEVADA
## DECLARATION OF VALUE

1. **Assessor Parcel Number(s)**

    a) 178-19-611-062
    b) _____
    c) _____
    d) _____

2. **Type of Property:**

    | | | | | |
    |---|---|---|---|---|
    | a) [ ] | Vacant Land | b) [ ] | Single Fam. Res | |
    | c) [X] | Condo/Townhouse | d) [ ] | 2-4 Plex | |
    | e) [ ] | Apt. Bldg | f) [ ] | Comm'l/Ind'l | |
    | g) [ ] | Agricultural | h) [ ] | Mobile Home | |
    | i) [ ] | Other | | | |

    **FOR RECORDERS OPTIONAL USE ONLY**
    Book: _____ Page: _____
    Date of Recording: _____
    Notes:

3.
    | | | | |
    |---|---|---|---|
    | a) | Total Value/Sales Price of Property | $ | 295,000.00 |
    | b) | Deed in Lieu of Foreclosure Only (value of property) | $ | |
    | c) | Transfer Tax Value: | $ | 295,000.00 |
    | d) | Real Property Tax Due | $ | 1,504.50 |

4. **If Exemption Claimed:**

    a) Transfer Tax Exemption, per NRS 375.090, Section:
    b) Explain Reason for Exemption:

5. **Partial Interest: Percentage being transferred:**     100.00%

The undersigned declares and acknowledges, under penalty of perjury, pursuant to NRS 375.060 and NRS 375.110, that the information provided is correct to the best of their information and belief, and can be supported by documentation if called upon to substantiate the information provided herein. Furthermore, the parties agree that disallowance of any claimed exemption, or other determination of additional tax due, may result in a penalty of 10% of the tax due plus interest at 1% per month. Pursuant to NRS 375.030, the Buyer and Seller shall be jointly and severally liable for any additional amount owed

| | | | |
|---|---|---|---|
| Signature: | | Capacity: | Grantor |
| Signature: | | Capacity: | Grantee |

| SELLER (GRANTOR) INFORMATION | BUYER (GRANTEE) INFORMATION |
|---|---|
| (Required) | (Required) |
| **Print Name:** RRR Homes, LLC, A Nevada LLC | **Print Name:** Samantha M. Jedlicki, Leonard P Krajkiewcz |
| **Address:** PO Box 98378 | **Address:** 4935 Hilbndale |
| **City, State, Zip:** Las Vegas, NV 89193-8378 | **City, State, Zip:** Anchorage AK 99516 |

**COMPANY/PERSON REQUESTING RECORDING (required if not the seller or buyer)**
Fidelity National Title Agency of Nevada, Inc.     Escrow #:  FT18-FT100027853-CLD
3100 W Sahara Avenue #115
Las Vegas, NV 89102

(AS A PUBLIC RECORD THIS FORM MAY BE RECORDED/MICROFILMED)



20060907-0000009

Fee: $15 00
N/C Fee: $0 00

09/07/2006          08:04:44
T20060155238
Requestor:
 US RECORDINGS INC

Frances Deane          CDO
Clark County Recorder     Pgs: 2

CORPORATION ASSIGNMENT of DEED OF TRUST

Parcel # 178-19-611-062
RFC Loan Number: 10423847
Seller Loan Number: 1005565845

WHEN RECORDED MAIL TO:

33499611-NBC-2
Recordings Requested by &
When Recorded Return To:
US Recordings, Inc.
2925 Country Drive Ste 201
St. Paul, MN 55117

(Area above reserved for County Recorder)



7/20/2006

**FOR VALUE RECEIVED, New Century Mortgage Corporation**

the undersigned hereby grants, assigns and transfers to

Mortgage Electronic Registration Systems, Inc., its successors
and assigns, PO Box 2026  Flint, Michigan 48501-2026

all beneficial interest under that certain Deed of Trust dated 12/28/2005
executed by MICHAEL E HARKEY , A SINGLE MAN

TO/FOR:    NEVADA TITLE COMPANY

and recorded in Book _____ on Page _____ as Instrument No. 200600112-0004134  01/12/2006
of official Records in the County Recorder's Office of CLARK County, Nevada.

Property Address:   2220 VILLAGE WALK DRIVE BUILDING 3 #3211  HENDERSON, NV  89052
MORTGAGE AMOUNT:  $760,000.00
TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon
with interest, and all rights accrued or to accrue under said Deed of Trust.

New Century Mortgage Corporation

BY: _____

NAME: Alfred Vandermade

TITLE: AVP Shipping Manager

MERS Phone: 1-888-679-6377
MIN # 100269610042738472

STATE OF                California )
COUNTY OF               Orange )

On ⁊·⁊D·Oₑ , before me, the undersigned, a Notary Public in and for said State personally appeared Alfred Vandermade, AVP Shipping Manager of New Century Mortgage Corporation personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument the entity upon behalf of which the person acted, executed the instrument   WITNESS my hand and official seal

Notary Public in and for said State
ERIKA REYES
This instrument was drafted by Shila Desai,
Residential Funding Corporation, One Meridian
Crossings, Suite 100, Minneapolis, MN 55423,
(952) 979-4000.



Please mail tax statements to MICHAEL E
HARKEY , A SINGLE MAN 2220 VILLAGE
WALK DRIVE BUILDING 3 #3211
HENDERSON, NV  89052

